In the Matter of the Application of PETER B. STANTON, Respondent, for a Peremptory Writ of Mandamus *v.* CHARLES L. CRAIG, as Comptroller of the CITY OF NEW YORK, Appellant.

PETER L. KENNEY and Others, Appellants.

First Department, February 21, 1919.

Depositions — deposition to be used on application for writ of mandamus — application by bidder for public work to take depositions of employees in office of comptroller of city of New York.

Application by the lowest bidder for certain public work in the city of New York for an order to take the depositions of several employees in the office of the city comptroller with reference to the practical interpretation of sections 419 and 420 of the Greater New York charter, relating to the letting of contracts, to be used upon an application for a peremptory writ of mandamus, should be granted, where it appears that said provisions of the charter are ambiguous or conflicting, that the testimony sought is material, and that the applicant has made out a *prima facie* case, and is acting in good faith.

SHEARN, J., and CLARKE, P. J., dissented, with opinion.

APPEAL by the defendants, Charles L. Craig, as comptroller, and by Peter L. Kenney and others, from an order of the Supreme Court, made at the Bronx Special Term and entered in the office of the clerk of the county of Bronx on the 13th day of December, 1918, denying their motion to vacate and set aside an order appointing a referee to take the depositions of Peter L. Kenney and others herein.

*William E. C. Mayer* of counsel [*Terence Farley* with him on the brief; *William P. Burr, Corporation Counsel*], for the appellants Harris and others.

*Douglas Mathewson* of counsel [*Henry H. Spitz* with him on the brief], for the respondent.

DOWLING, J.:

I am of the opinion that the respondent has made out a case entitling him to take the deposition of the witnesses in

question.   I do not understand that the merits of an action or proceeding are to be tried out upon what is merely a preliminary application, which does not involve the decision of the main controversy.   The respondent has shown facts sufficient, in my opinion, to indicate that he has at least a real question to submit for the determination of the court and that he cannot fully or adequately do so without the testimony sought to be obtained.   I think that the two sections of the Greater New York charter referred to at least furnish ground for reasonable argument that they are ambiguous and conflicting as well.   (See Laws of 1901, chap. 466, §§ 419, 420, as amd. by Laws of 1910, chap. 554, and Laws of 1917, chap. 157.)   In view of the fact that the respondent obtained an extension of time from the borough president of The Bronx within which to file his bond, it becomes vitally important to determine whether such president had power to grant an extension, for if he did the respondent submitted the sureties on his bond for approval within the time set by that official. Where two sections of the charter are ambiguous or conflicting, it may be very important indeed to show the practical interpretation put upon them by the comptroller, the financial officer of the city, and the continuous course of action adopted by successive incumbents of that office, acting under said sections which it is claimed will amply sustain the respondent's contention.   I believe it is sufficient if the petitioner for such an order makes out a *prima facie* case and if his application is obviously made in good faith and for the purpose of obtaining material testimony.   All of these elements, I think, are present in the pending application.   The matter is of importance to the city for this respondent is the lowest bidder upon the work in question and the effect of denying him any relief to which he may be entitled will be to subject the city to an additional expense, which, at the time the bids were made, would have varied from $81,000 (at the next lowest bid) to $455,000 (at the highest bid), and which, because of changed conditions, would probably involve a still greater loss to the city at this time.   Nor do I see any force in the appellants' contention that this would involve such a tremendous expenditure of time and energy upon the part of the city employees sought to be examined, for it appears from their affidavits that they have

already examined the registers and obtained the information sought to be elicited by the respondent.

For these reasons I vote for the affirmance of the order appealed from, with ten dollars costs and disbursements.

SMITH and PAGE, JJ., concurred; CLARKE, P. J., and SHEARN, J., dissented.

SHEARN, J. (dissenting):

This appeal presents a somewhat extraordinary situation. An order was made *ex parte* directing several employees in the office of the comptroller of the city of New York to attend before a referee for the purpose of having their respective depositions taken pursuant, as it is claimed, to section 885 of the Code of Civil Procedure. The order is entitled " In the Matter of the Application of Peter B. Stanton for a Peremptory Writ of Mandamus against Charles L. Craig, Comptroller of the City of New York." No application had been made for a writ, but proof was made that the petitioner intended to apply for a writ and desired to use the depositions in support of his intended application. The scope of the examination is very broad, involving a detailed and extended investigation of the practice and methods pursued in the comptroller's office throughout the past twenty years in connection with the method of handling security deposits in connection with bids upon contracts, the time taken by the comptroller to pass upon the adequacy and sufficiency of sureties thereon, and the practical construction by the comptroller of the city of New York and by all the officials and employees of the department of finance of said city and by all other city departmental heads and officers since January 1, 1898, of existing laws and ordinances relating to the award and making of city contracts and as to the facts, acts, steps and things showing such practical construction of existing laws and ordinances relating to the award and making of city contracts. The extent of the proposed examination, and the length of time during which the witnesses will be detached from their regular duties, are made more apparent by the affidavits submitted in behalf of the comptroller on a motion to vacate the order, the denial of which resulted in the order appealed

from, wherein it is shown that since January 1, 1898, 50,200 contracts have been registered in the office of the comptroller.

The occasion for the order was briefly this: The petitioner Stanton was the lowest bidder for the doing of certain public work advertised by the president of the borough of The Bronx. On July 20, 1918, the borough president awarded Stanton the contract and notified him of the award in writing and required Stanton to appear at once before the comptroller with the surety or sureties which " you have proposed to give upon said contract, for examination of and approval as to adequacy and sufficiency." Section 419 of the Greater New York charter (Laws of 1901, chap. 466, as amd. by Laws of 1910, chap. 554) provides: " If the bidder whose bid has been accepted shall neglect or refuse to accept the contract within five days after written notice that the same has been awarded to his bid or proposal, or if he accepts but does not execute the contract and give the proper security, it shall be readvertised and relet as above provided." Section 420 of the charter (as amd. by Laws of 1917, chap. 157), which provides that as a condition precedent to the reception of any bid for city work the bidder shall make a deposit to an amount not less than three per centum of the amount of the bond required by the department for the faithful performance of the work proposed to be done, further provides that " If the said bidder whose bid has been accepted shall refuse or neglect, within five days after due notice. that the contract has been awarded, to execute the same, or to furnish the required bond, the amount of deposit made by him shall be forfeited to and retained by the said city as liquidated damages for such neglect or refusal." Stanton avers that owing to causes over which he had no control he was " delayed in procuring and filing the required sureties. * * * That this delay and the reasons therefor were explained to the President of the Borough of The Bronx and that said President of the Borough of The Bronx stated and agreed that deponent's time to file and submit his sureties was extended until Wednesday, August 14th, 1918. That such extension was granted to deponent within five days after his receipt of the aforesaid notice from the President of the Borough of The Bronx, bearing date July 20th, 1918." He then shows that on

August 14, 1918, his sureties were filed in and submitted to the office of the comptroller for approval as to adequacy and sufficiency but that the comptroller has refused to pass upon same upon the ground that the required bond was not furnished within five days after due notice that the contract had been awarded, as provided by section 420 of the Greater New York charter. Claiming that " there is ambiguity in the provisions of sections 419 and 420 of ' The Greater New York Charter ' in so far as concerns the procedure upon the letting of a contract, the rights of a successful bidder for such a contract, and the power of the city to forfeit an award after the same has been made as well as the security deposit made by a successful bidder and as to what official has authority to forfeit a contractor's right to an award once made and the security deposit made by such a contractor and also as to the meaning of the term ' furnish the required bond,' " and that if said sections are properly construed it was the duty of the comptroller to pass upon the sufficiency of the sureties notwithstanding the expiration of the five-day period, Stanton avers his purpose of procuring a peremptory writ of mandamus against the comptroller requiring him to act in the premises. Stanton further avers that it is " material and essential to the prosecution of such a proceeding " that he " should have proof of the practical construction, placed for many years past, upon section 419 and section 420 of the Charter so far as the same concern the issues which will arise in such proceeding and upon the provisions of the Code of Ordinances of the City of New York relating to the letting of contracts, so far as the same are involved and concern the proceeding so proposed to be brought by deponent — by the municipal authorities and officials of the City of New York and the practical construction of such statutes and ordinances which have been adopted and followed by the said municipal authorities and officials and generally acquiesced in and relied upon." Averring on information and belief that the witnesses named have knowledge of the facts and circumstances that " will be material as tending to confirm deponent's claim as to the practical construction placed upon the statutes and ordinances applicable to deponent's case, adopted and followed by the municipal authorities for many years and

generally acquiesced in and relied upon by them and by those doing business with the City of New York," the petitioner applied for and obtained the order for the taking of their depositions.

Passing the points, which though technical are pertinent, that the order was granted before any action or special proceeding had been begun, and that if an application for a writ of peremptory mandamus is in itself a special proceeding, section 1997 of the Code of Civil Procedure only extends the provisions of the Code relating to amendments, motions and intermediate orders " to a special proceeding instituted by State writ," the broader question is presented as to whether the facts sought to be adduced are material and necessary to the prosecution of the application for the writ of peremptory mandamus. In no case, whether upon a trial or preliminary thereto, does a court require either parties or witnesses to give testimony which is not material to the issue. The petitioner recognizes this by his attempt to show the materiality and necessity of the testimony sought. In the taking of testimony before trial, where it is fairly arguable that the testimony will be material, the disposition is to permit the testimony to be taken. But where it clearly appears that in no aspect of the case can the testimony be material, and where its taking will inconvenience and unnecessarily take the time of witnesses, or, as here, interfere with the business of an important public office, the discretion of the court should be exercised against the petitioner who fails to make out a case.

It is conceded that the testimony sought is only material and necessary in the event that there is some real ambiguity in the statute, for, of course, if the law's mandate is plain, no " practical construction," consisting of the failure of public officials to obey the law, could change or nullify it.

I am unable to discover any ambiguity in the requirement that the successful bidder to whom a contract with the city has been awarded shall furnish the required bond within five days after due notice that the contract has been awarded, and in default thereof shall forfeit his deposit.

It is claimed that ambiguity exists by reason of the fact that in that part of section 419 of the charter, dealing with

readvertising and reletting a contract, where the successful bidder has neglected or refused to accept the contract within five days after written notice that the same has been awarded, " or if he accepts but does not execute the contract and give the proper security," the expression " give the proper security " is employed, whereas in section 420, dealing with forfeiture of deposit, the condition of the forfeiture is stated in these words: " If the said bidder whose bid has been accepted shall refuse or neglect, within five days after due notice that the contract has been awarded, to execute the same, *or to furnish the required bond.*" There is no apparent difference between " give the proper security " and " furnish the required bond; " and if there were, it would make no difference in this case, because it is not pretended that the petitioner did either within the five-day period. Moreover, the two sections deal with distinct matters. Section 419 deals with readvertising and reletting an abandoned contract, and defines what shall constitute its abandonment. Section 420 deals with getting the required bond approved by the comptroller and the consequent forfeiture of deposit if the approval be not obtained within the five-day period. Both of these provisions are perfectly plain and mean just what they say. No other meaning is suggested by the petitioner, but he contends that the sections do not mean what they say because for many years past successive comptrollers have not seen fit to enforce a forfeiture of the deposit in cases where satisfactory sureties were furnished after the five-day period. I do not see how a disregard of a law can be successfully transformed into a " practical construction " which shall be binding upon a succeeding official, who has concluded to observe the law however harsh and unreasonable it may be. Incidentally it may be noted that it appears in the affidavits submitted in behalf of the comptroller that out of 50,200 contracts registered since January 1, 1898, there have been very few in which the bond has not been furnished within five days after notice of award.

It is further claimed that there is ambiguity in that there is no provision made in section 420 as to who shall forfeit the deposit. But the obvious answer to this is that the law itself declares the forfeiture.

Accordingly, it seems to me very clear that the testimony

First Department, February, 1919.                [Vol. 186.

sought is not material and necessary, for it relates only to a claimed ambiguity which does not exist.

It is argued on behalf of the comptroller that the whole proceeding is obviously futile because, in any event, it was at least within the administrative discretion of the comptroller to refuse to pass upon sureties furnished after the five-day period prescribed by the statute, with which discretion the courts would be required, under the settled rules, to refuse to interfere. But that is not an argument that should be considered in passing upon an application to take testimony for use in the contemplated proceeding.

In my view of the matter no case was made out warranting the order for the examination of these witnesses, and the order appealed from should, therefore, be reversed, with ten dollars costs and disbursements, and the order of December 2, 1918, vacated and set aside, with ten dollars costs.

CLARKE, P. J., concurred.

Order affirmed, with ten dollars costs and disbursements.